■ MARTIN CHARNIN et al., Appellants, v DAVID J. COGAN et al., Respondents. [673 NYS2d 134] —Order, Supreme Court, New

York County (Herman Cahn, J.), entered February 20, 1997, which, to the extent appealed from, disaffirmed the findings of a Special Referee as to defendant David Cogan and otherwise affirmed the findings of the Special Referee, and dismissed the action against defendants David Cogan, David Bell and Evan Bell, unanimously reversed, on the law, with costs, and the complaint reinstated as to those defendants.

Plaintiff Martin Charnin is the sole shareholder and president of plaintiff company Beam One Limited. The individually named defendants include Charnin's former agents, representatives, accountants and business and investment managers, who in turn are the principals of the partnership and corporate defendants as to which the complaint was dismissed pursuant to the order on appeal. The essence of plaintiffs' claim is that defendants fraudulently and negligently mishandled plaintiffs' investments, resulting in substantial financial losses. The sole issue before us, however, involves the threshold question of whether service of process was properly effected on the individual defendants.

Plaintiffs commenced this action in November 1989, and defendants submitted an answer in January 1990. Following service of an amended complaint in March 1993, defendants moved to dismiss the action for lack of personal jurisdiction, on the ground that the parties had not been properly served in the first instance, with the exception of corporate defendant Sharcar, Inc., as to which jurisdiction was conceded.

A traverse hearing was conducted before a Special Referee on the issue of personal jurisdiction, and the evidence relevant to service on the individual defendants was as follows. On October 27, 1989, Matthew Steinberg, the mail room supervisor at the law firm representing plaintiffs, went to David Cogan's apartment house and "attempted to deliver [the summons] to him personally." Steinberg attempted to go upstairs to Cogan's apartment, but the uniformed doorman of the building informed him that Cogan was not at home; therefore, Steinberg was not able to go upstairs. Instead, he left the summons with the doorman as the law firm had instructed him to do in the event that he could not serve Cogan himself. Steinberg ascertained the doorman's name and wrote down his physical description. A copy of the summons and complaint was thereafter mailed to Cogan at his residence, marked "personal and confidential," by the law firm's senior paralegal, who testified to this effect at the hearing.

On December 8, 1989, Taras Sawchuk, the managing law clerk of the firm representing plaintiffs, went to the office of

Bell & Company with an envelope containing summonses and complaints for David and Evan Bell (as well as the various business entities). He told the office receptionist, Carmen Ascue, that he had papers for David Bell, but Ascue said something to the effect that Bell was unavailable or could not come out; Sawchuk recalled that her words were "he's not in" or "I can take it for him." In response to his inquiry, she told him her name and acknowledged that she worked for Bell & Company. Sawchuk gave her the envelope, which he told her contained summonses and complaints for the Bells. Sawchuk wrote down Ascue's physical description, returned to work and prepared a mailing of the summons and complaint the same day. The envelopes were marked "personal and confidential," with no identifying return address other than a street address. In his capacity as docketing clerk at the firm, Sawchuk monitored incoming mail; he testified that the envelopes mailed to Cogan and the Bells were not returned.

David Cogan, Carmen Ascue, David Bell and Evan Bell testified on behalf of defendants. Sometime late in November 1989, Cogan found the envelope with the summons and complaint in the hallway by the entrance to his apartment. According to Cogan, it was the custom and practice for doormen at his building to accept packages from uniformed individuals, but they were not supposed to accept packages for tenants who were not at home. Cogan knew the doorman with whom Steinberg had left the papers, but Cogan never inquired about the envelope's appearance. Cogan denied receiving a copy of the summons and complaint by mail.

David and Evan Bell also denied receiving a copy of the summons and complaint by mail. Each testified, however, that he had found the summons and complaint on his desk at work but did not know how it got there and made no inquiry about it. No one was authorized to accept service on their behalf.

Carmen Ascue, a receptionist for Bell & Company from 1988 to 1990, testified that she was not authorized to accept service of process for her employers and that she would have refused service if anyone had attempted it. When Sawchuk came to the office, he did not say he had legal papers to be served on the Bells. Ascue did not accept Sawchuk's envelope because he did not identify the company for which he worked, and she did not tell Sawchuk that she would accept the summons and complaint from him. Sawchuk did not leave the papers on her desk, but he may have left them on a table near the door. However, Ascue did not pick up the papers he left, and she had no idea what happened to them after that.

In his report of March 22, 1994, the Referee found that service was properly made only as to David Cogan. He concluded that Steinberg's delivery of the papers to the doorman at Cogan's residence and the follow-up mailing complied with the relevant statutory requirements of CPLR 308 (2) to obtain personal jurisdiction. As to David and Evan Bell, however, the Referee cited an insufficient showing that Ascue was "a person of suitable age and discretion" under CPLR 308 (2), such that leaving the summonses and complaints with her at their place of business could not be said to constitute personal service upon them. (The Referee further concluded that service had not been effected on the various business entities, but this is not an issue on appeal.) Plaintiffs moved to confirm the report with respect to the Referee's finding as to Cogan and otherwise disaffirm the report; defendants moved to disaffirm only as to the finding of service on Cogan and confirm it in all other respects.

The IAS Court disaffirmed the finding as to Cogan and otherwise confirmed the Referee's report, resulting in the dismissal of the complaint as to all individuals and business entities except for Sharcar, Inc. Citing *duPont, Glore Forgan & Co. v Chen* (41 NY2d 794) and *Costine v St. Vincent's Hosp. & Med. Ctr.* (173 AD2d 422), the court found that, as to Cogan, there was insufficient proof of the doorman's duties to permit a finding that valid service had been made. As to the individual Bell defendants, the court credited Ascue's testimony that she told Sawchuk she was not authorized to accept process. The court also stated that it was "undisputed that Sawchuk left the process on the floor near Ascue's office," apparently misreading even Ascue's testimony that Sawchuk may have left them on a table by the door. In any event, the court apparently found that Ascue was not a person of suitable age and discretion with whom to leave the summonses. It also noted there was no evidence that the Bells were avoiding service. We now reverse and reinstate the complaint as to the three individual defendants.

CPLR 308 (2) provides that personal service upon an individual may be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the

outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other".

With respect to David Cogan, the Referee correctly determined that valid service had been made on him by leaving a copy of the summons and complaint with a doorman at his building and following up with the requisite mailing. The Court of Appeals has observed that so long as the record does not reveal that the duties of the particular doorman in question varied from the usual duties of such an individual, i.e., "to screen callers, to announce visitors and to accept messages and packages for delivery to the tenants," then a doorman may qualify as " 'a person of suitable age and discretion' " at the intended party's place of residence such that a summons may be delivered to him for purposes of alternate service under CPLR 308 (2) (*duPont, Glore Forgan & Co. v Chen*, 41 NY2d 794, 797, *supra*). On numerous occasions, in circumstances similar to those before us, where a process server has not been permitted access to the specified apartment or is advised that the intended party is not home, a doorman has been found to be such a person of suitable age and discretion within the contemplation of CPLR 308 (2) (*see, e.g., Braun v St. Vincent's Hosp. & Med. Ctr.*, 57 NY2d 909; *State St. Bank & Trust Co. v Broadway / St. Nicholas Assocs.*, 214 AD2d 474; *Rosenberg v Haddad*, 208 AD2d 468; *Costine v St. Vincent's Hosp. & Med. Ctr.*, 173 AD2d 422, *supra*).

Here, Cogan himself testified that the doormen at his building were expected to accept packages and deliveries. Moreover, as the Referee pointed out during the hearing, if service of process is shown to comply with the requirements of CPLR 308 (2), the validity of that service cannot be defeated by evidence of a building policy concerning limitations on the deliveries that may be accepted. Accordingly, the court erred in rejecting the Referee's findings in this respect and concluding that there was insufficient evidence of the duties of this particular doorman. Since this was the sole ground on which the court disaffirmed the Referee's finding, and both the court and the Referee found sufficient proof of the subsequent mailing, we find that service upon Cogan's doorman conformed to the requirements of CPLR 308 (2) and should be upheld.

We further find that leaving the summonses and complaints for David and Evan Bell with the receptionist at their office constitutes valid service in compliance with CPLR 308 (2). While the court seems to have focused on Ascue's lack of

authority to accept service, this is not the criterion with respect to service on the Bells as individuals. Having been told that he could not see Bell, and noting that the door behind Ascue leading to the inner offices was locked, Sawchuk was effectively denied access to the intended parties and was entitled to leave the papers with Ascue, whom he duly ascertained was their employee. Indeed, leaving such papers with a receptionist, or in the latter's general vicinity if he or she refuses to take them physically from the process server (*see, Bossuk v Steinberg*, 58 NY2d 916; *Duffy v St. Vincent's Hosp.*, 198 AD2d 31), has been upheld to be valid service precisely because the job of such individual includes taking messages and accepting deliveries, and such person may reasonably be expected to convey the message or papers to the intended party (*see, Townsend v Hanks*, 140 AD2d 162; *Albilia v Hillcrest Gen. Hospital*, 124 AD2d 499; *Roldan v Thorpe*, 117 AD2d 790, *lv dismissed* 68 NY2d 663; *see also, Eastman Kodak Co. v Miller & Miller Consulting Actuaries*, 195 AD2d 591).

In the instant case, leaving the papers with or near Ascue was valid for purposes of CPLR 308 (2) as to the individual Bell defendants despite the testimony of Ascue, David Bell and Evan Bell that Ascue was not authorized to accept service on behalf of her employers. As noted above in connection with the service of process on Cogan's doorman, where service conforms to the statutory requirements, its validity is not undermined or defeated by an employer policy discouraging or even prohibiting acceptance of service of process.

The facts of *Frankel v Winter* (180 AD2d 549), cited by the court in reaching its conclusion as to the Bells, are distinguishable from those presented to us here. In *Frankel*, the process server left a summons and complaint on the floor in the reception area common to several businesses, where the party to be served was not in and the only individuals present had no connection or relationship to the intended party. Here, upon being denied access to the Bells, the process server left the summons and complaint with (or near) their admitted employee whose job included taking messages and accepting deliveries.

Accordingly, we find that, as to David and Evan Bell, plaintiffs demonstrated by a preponderance of the evidence that service was validly made on them by leaving the summons and complaint with their receptionist and sending the requisite follow-up mailing. In this respect, we note that the Referee specifically found that the papers were left in Ascue's presence and the mailing was made in the requisite manner, in the event that his finding regarding her lack of status to

receive service was rejected. Concur—Sullivan, J. P., Milonas, Rosenberger and Williams, JJ.